JEWELL v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

1. CARRIERS OF PASSENGERS—NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for personal injuries it appeared that plaintiff was a passenger on defendant's train on a branch line. Plain-tiff's train stopped at the station, where the main track ran parallel between the branch track and the depot. A person standing on the ground by the train could see the main track 250 feet, and on going 2 feet further to-wards the depot he could see from 350 to 450 feet. As the train drew into the station, and while moving slowly, and on the point of stopping, plaintiff stepped down to the ground, and took three or four steps towards the depot, when he was struck and injured by a train on the main track running at a high rate of speed, endeavoring to pass before plaintiff's train stopped. Held, that the question of defendant's negligence was properly submitted to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

When the trainmen announce a station, a passenger has a right to assume that there is a safe exit from the car to the depot, and if, in acting on this assumption, he crosses a track, and fails to observe an approaching train, which he might have seen, and is struck and injured, his failure to look, while material in determining contributory negligence, need not necessarily preclude a recovery for the injury because of the carrier's negligence.

3. SAME—NEGLIGENCE OF PASSENGER IN ALIGHTING.

Though a passenger who alights from a car before the train stops, and is injured by a passing train on a parallel track, may be guilty of negligence, unless such negligence was the proximate cause of his injury it does not constitute contributory negligence as a matter of law, and is a circumstance for the jury to consider in connection with other evidence, in an action against the carrier.

4. SAME—EVIDENCE OF INJURY—COMPETENCY.

In an action for personal injuries a medical witness testified to having at-tended plaintiff after the accident, and stated that he found an affection of the ear, and added, after describing it, that such condition indicated "a state of chronic inflammation of the middle ear, extending in many cases to the

brain." No claim was made that plaintiff's brain was in any danger of becoming affected from his injuries. *Held*, that the admission of such evidence was reversible error.

Ward, J., dissenting.

Appeal from trial term, Genesee county.

Action by John Jewell against New York Central & Hudson River Railroad Company. From a judgment entered in Genesee county for $4,421.02, and from an order of special term denying a motion for new trial on a "case" and exceptions, defendant appeals. Reversed.

The plaintiff brings this action to recover damages for personal injuries which he claims to have sustained in consequence of the defendant's negligence. The accident which resulted in the injuries complained of occurred at the defendant's station in the village of Batavia, at about half past 8 o'clock on the morning of September 17, 1894. The plaintiff had arrived that morning from Alexander upon a local train, which ran over one of the defendant's branch roads, of which branch Batavia was the eastern terminus. He had frequently traveled upon this road, and was entirely familiar with the Batavia depot and its surroundings. The plaintiff's train came to the depot upon what is known as the "Attica" track, between which track and the depot there was another track for the use of eastward-bound passenger trains running upon the defendant's main line. These tracks were 8½ feet apart in front of the depot, and ran parallel to each other for some distance to the west, where the Attica track bore off to the south. When the plaintiff's train was in front of the depot, a person standing upon the ground close by the train could see the main track for a distance of 250 feet to the west, and upon going two feet further north, towards the depot, he could see from 350 to 450 feet in the same direction. The train upon which the plaintiff was a passenger consisted of an engine and two cars. The plaintiff occupied a seat in the forward coach, which was a combination car, a portion thereof being used for baggage. As the train drew into the station at Batavia, the plaintiff went out onto the platform of his car, and while it was moving very slowly, and upon the point of stopping, stepped down to the ground, and, as he says, took three or four steps towards the depot, when he was struck by the engine of a passenger train going east upon the main track at a high rate of speed, and received the injuries for which he seeks compensation in this action. At the close of the plaintiff's case, and again when the proofs were in, the defendant moved for a nonsuit upon the grounds (1) that no negligence upon the part of the defendant had been established, and (2) that it appeared affirmatively that the plaintiff was guilty of contributory negligence.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles A. Pooley, for appellant.
O. P. Stockwell, for respondent.

ADAMS, J. Upon the facts above narrated,—as to which there was not much controversy,—we are unable to discover how it can be successfully contended that the question of the defendant's negligence was not properly submitted to the jury. The train which struck the plaintiff was at least half an hour behind time, and running at a rate of speed which no witness places at less than 20 miles an hour, between the Attica train and the depot, at a time when the latter train had just arrived at the station, and was about to discharge its passengers. This was not only gross negligence, but it was in direct violation of one of the defendant's rules; and the fact that the engineer of the express train was endeavoring to pass the other before it had come to a full stop does not lessen the degree of the defendant's negli-

gence, nor relieve it from the consequences which ensued. Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241; Parsons v. Railroad Co., 113 N. Y. 355, 21 N. E. 145. But in this, as in all similar cases, the negligence of the defendant is but one of the essential elements of a recovery, and when we come to consider the equally important question of the plaintiff's freedom from contributory negligence the case is not altogether free from embarrassment. From the situation of affairs at the Batavia depot, it is a little difficult to understand how the plaintiff could have come into contact with the train which struck him had he taken the pains to look in the direction from which it was coming before attempting to cross the intervening track. That he did not look is pretty evident, and is not seriously denied. This omission would, in most instances, establish contributory negligence per se, but the facts of this case call for the application of a somewhat different rule from that which ordinarily obtains. The plaintiff was a passenger upon one of the defendant's trains. As his train approached the depot, the trainman announced the station, and the plaintiff thereupon proceeded to leave the car in which he was riding. In doing so he had the right to assume that the defendant would afford him a safe exit from the car, and a free and clear passage to the depot; and if, in acting upon this assumption, he failed to observe the approaching train, which he might have seen had he looked, this fact, while material and important for the consideration of the jury, did not necessarily preclude a recovery. Brassell v. Railroad Co., supra.

But it is urged that the plaintiff would not have been injured had he not alighted from his train before it came to a full stop, and here arises the serious question in the case. That the plaintiff did step down onto the ground while the train was in motion is conceded, and that in doing so he was guilty of a negligent act which, if it in any manner contributed to the accident which followed, would defeat his right of action, is not to be denied. Solomon v. Railroad Co., 103 N. Y. 437, 9 N. E. 430. The important inquiry, therefore, which we have to consider is, to what extent, if at all, did the plaintiff's manner of alighting from the train operate to produce the injury of which he complains? because, while his alighting may, in itself, have been negligent to the last degree, yet unless it can be demonstrated that the accident would not have happened but for such negligent act, or, in other words, unless that act was the proximate and concurrent cause of the plaintiff's injuries, it does not constitute contributory negligence as a matter of law. Distler v. Railroad Co., 151 N. Y. 424, 45 N. E. 937; McKeon v. Railway Co., 20 App. Div. 601 47 N. Y. Supp. 374. In considering this aspect of the case, it may be said that, if the plaintiff had remained on his train until the eastward-bound train had passed, no accident would have occurred. This, of course, is a self-evident fact; but was the plaintiff bound to do this? He had frequently come to Batavia on this same train, and had never before seen a train passing upon the intervening track. Upon this particular occasion the station was called out by the trainman, and no warning was given to the passengers in the forward coach of the approaching train, although it appears that the conductor, who was in

the rear car, saw it coming, and went to the door to prevent the passengers in that car from alighting until it had passed.    Notwithstanding all this, however, if the plaintiff, in alighting from his car while it was in motion, had come into immediate collision with the other train, the defendant's counsel would be entirely correct in his contention that the relation of cause and effect was established with sufficient certainty to constitute the plaintiff's negligence a question of law and not of fact.    But this contention is weakened by the testimony of the plaintiff which was to the effect that, although he alighted from the train while it was in·motion, it nevertheless came to a full stop before the collision occurred; and in this statement he was corroborated by two or three other witnesses who were in the rear coach, who say that their train ceased to move just as the other train caught up with it.    It follows, therefore, that it cannot be said with any degree of certainty that the accident would have been avoided if the plaintiff had waited until his train had stopped before alighting; for, if his evidence and that of his witnesses is to be credited, there was time for him to have alighted from his train after it had come to a full stop, before the other train had reached a point opposite the end of the car from which he alighted.    And we are consequently of the opinion that his alighting at the time and in the manner he did was properly regarded by the trial court as a circumstance to be considered by the jury in connection with the other evidence in the case in determining whether or not it contributed to produce the accident which subsequently occurred.    The learned trial justice instructed the jury fully and carefully respecting this feature of the case, and stated with emphasis and iteration that, if the plaintiff's injuries were the natural and proximate result of his alighting while the train was in motion, he could not recover in the action.    We are inclined to think, after a careful perusal of the record, and a consideration of the somewhat peculiar circumstances of this case, that no error was committed in treating the question of contributory negligence as one of fact, and that the charge of the learned trial justice upon this subject was as favorable to the defendant as the facts and circumstances of the case warranted.

But, having thus disposed of the questions arising upon the defendant's exceptions to the refusal to nonsuit, we find ourselves compelled to grant a new trial by reason of the admission of evidence which was not only improper, but in all probability highly prejudicial. The plaintiff called as a witness in his behalf a certain Doctor Morse, who it seems had attended him professionally, but not until about a year after the accident.    This witness testified to the plaintiff's physical condition at the time when he saw him, and stated that he discovered, among other things, that he was suffering from a purulent inflammation of the middle ear, which was attended with a discharge of offensive matter.    This difficulty was one which did not make its appearance until long after the accident occurred, and it was a matter of very grave doubt whether it was not attributable to a catarrhal affection, rather than to the accident.    But, however that may be, the jury were permitted to consider this as one of the elements of damage for which they might award the plaintiff compen-

sation.    During the progress of Dr. Morse's examination he described
the condition in which he found the plaintiff's ears, and then of his
own volition added that such condition indicated "a state of ·chronic
inflammation of the middle ear, extending in many cases to the brain."
The defendant's counsel asked to have this evidence stricken out,
which request was refused, and an exception followed.    Up to this
point in the trial of the case it had not been claimed, or even hinted,
that the plaintiff's brain was in any danger of becoming affected in
consequence of the injuries which he had received, and this witness
only spoke of such a result as a remote possibility, not likely to occur
in this case, but one which sometimes happened "in many cases."
We think this evidence was purely speculative and conjectural, and
as such it was directly within the condemnation of the rule laid
down in the Strohm Case, 96 N. Y. 305, and in the Tozer Case, 105 N.
Y. 617, 11 N. E. 369.    That it was prejudicial to the defendant can-
not be doubted, for the other injuries of which the plaintiff complains
would hardly have warranted the large verdict which the jury ren-
dered.    We do not, therefore, feel at liberty to disregard it, or to
relegate it to that very convenient receptacle of questionable rulings
which is usually denominated "harmless error."

Judgment and order reversed, and a new trial ordered, with costs
to the appellant to abide the event.    All concur, except WARD, J.,
who dissents.